## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **WESCO INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.** <u>CIV-19-477-SLP</u> |
| **v.** | ) | |
| | ) | |
| **CITIZENS BANKSHARES, INC.,** | ) | |
| **AMERICAN SOUTHWEST** | ) | |
| **MORTGAGE FUNDING CORP., and** | ) | |
| **THE CITIZENS STATE BANK,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

### COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

---

Comes now the Plaintiff, Wesco Insurance Company ("Wesco"), by and through undersigned counsel, and hereby brings this Complaint for Declaratory Judgment and Other Relief pursuant to 28 U.S.C. § 2201. For its Complaint for Declaratory Judgment and Other Relief against Citizens Bankshares, Inc. ("Citizens"), American Southwest Mortgage Funding Corp. ("Funding Corp."), and The Citizens State Bank (the "Bank") (collectively, the "Defendants"), Wesco hereby alleges as follows:

### I.     THE PARTIES

1.     Wesco is a Delaware corporation authorized to do business in the State of Oklahoma.  Wesco's principal place of business is New York, New York, from which high level officers direct, control, and coordinate Wesco's activities.

2.     Upon information and belief, Citizens is an Oklahoma corporation with its principal place of business in the State of Oklahoma and may be served with process via its registered agent, S. Trevor Kelly, at 11217 N. May Ave, Oklahoma City, Oklahoma 73120.

3.      Upon information and belief, Funding Corp. is an Oklahoma corporation with its principal place of business in Oklahoma City, Oklahoma and may be served with process via its registered agent, Richard Carrington, at 5900 Mosteller Dr. Ste. 200, Oklahoma City, Oklahoma 73112.

4.      Upon information and belief, the Bank is a bank chartered under the laws of the State of Oklahoma with its principal place of business in Okemah, Oklahoma and may be served with process via its registered agent, Hugh L. Harrell.

## II.      JURISDICTION AND VENUE

5.      This Court has the power to determine the parties' respective rights and other legal obligations as requested herein pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. The demands by the Defendants, discussed below, create an actual controversy for this Court to adjudicate.

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

7.      Venue is proper before this Court pursuant to 28 U.S.C. § 116 and 28 U.S.C. § 1391(b)(1) because Citizens and Funding Corp. are located within this judicial district and the Defendants are all citizens of the State of Oklahoma.

## III.      FACTUAL ALLEGATIONS

8.      Wesco issued Commercial Policy No. WDO1405362-01 (collectively with all endorsements, the "Wesco Policy") to Citizens, with the Bank and Funding Corp. being listed on

a Schedule of Subsidiaries. The Wesco Policy is subject to an effective policy period from September 20, 2016 to September 20, 2017 (the "Wesco Policy Period").[1]  A true and accurate copy of the Wesco Policy is attached hereto as **Exhibit 1**.

9.      Insuring Agreement I.C (Company Liability Coverage) of the D&O Liability Coverage Part[2] of the Wesco Policy is subject to a $4,000,000 limit of liability and a $50,000 retention.  It states, in relevant part:

> The **Insurer** will pay on behalf of the **Company**:
>
> 1.  **Loss** resulting from any **Claim** first made during the **Policy Period** or the **Extended Reporting Period** (if exercised) against the **Company** for any **Wrongful Act** not covered in any other **Coverage Part** made part of this **Policy**;

10.      The D&O Liability Coverage Part of the Wesco Policy defines Claim as:

> **<u>Claim</u>** means:
>
> 1.      a written demand, other than a **Shareholder Derivative Demand**, for monetary damages or non-monetary relief;
> 2.      a civil proceeding commenced by the service of a complaint or similar pleading;
> 3.      a criminal proceeding commenced by a filing of charges or the return of an indictment;
> 4.      a formal administrative or regulatory proceeding commenced by a filing of a notice of charges, formal investigative order, service of summons, or similar document;
> 5.      an arbitration, mediation or similar alternative dispute resolution proceeding if the Insured is obligated to participate in such proceeding or if the **Insured** agrees to participate in such proceeding, with the **Insurer's** written consent, such consent not to be unreasonably withheld;
> 6.      service of a subpoena on an **Insured Person** identified by name if served upon such person pursuant to a formal

---

[1] Defined terms in the Wesco Policy are in **bold**.  In this Complaint, they are Capitalized unless block quoted.
[2] The Defendants have asserted that coverage is also implicated under Insuring Agreement I.B (Professional Services Liability) of the Professional Liability Coverage Part.  Wesco continues to fully reserve all rights under that portion of the Wesco Policy.

investigative order by the Securities and Exchange Commission;

7.   a **Shareholder Derivate Action** solely with respect to Insuring Agreement C.2. only; or

8.   a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding,

against an **Insured** for a **Wrongful Act**. **Claim** does not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement.

11.     The D&O Liability Coverage Part the Wesco Policy defines Company as "the Parent Company and any Subsidiary."

12.     D&O Liability Coverage Part of the Wesco Policy defines Loss as:

**Loss** means **Defense Expenses** and any amount the **Insured** is legally obligated to pay resulting from a **Claim**, including damages, judgments, settlements, punitive or exemplary damages or the multiple portion of any multiplied damage award (if insurable under the applicable law most favorable to the insurability of punitive, exemplary, or multiplied damages), prejudgment and post judgment interest, and legal fees and expense awarded pursuant to a court order or judgment. **Loss** shall not include:

1.   payroll or other taxes;

2.   criminal or civil fines or penalties imposed by law;

3.   any unpaid, unrecoverable or outstanding amounts resulting from a loan, lease or extension of credit to any borrower, including unpaid, unrecoverable or outstanding amounts resulting from a loan, lease or extension of credit which has been sold as a participation to other financial institutions;

4.   any increased amount in the price or consideration paid, or proposed to be paid, for any actual or attempted acquisition of all or substantially all of the ownership interest in, or assets of, an entity, or merger with any entity;

5.   any restitution, disgorgement, or payment of similar payments including but not limited to the return of fees, commissions or charges for the **Company's** services;

6.   costs to comply with any non-monetary or injunctive relief of any kind or any agreement to provide such relief, including but not limited to any damages, costs or expenses incurred in making an accommodation for any

disabled person pursuant to the Americans with Disabilities Act or any similar federal, state or local laws, or in complying with any other federal, state or local laws of any kind; or

7.      any matters which are uninsurable under the law pursuant to which this **Policy** shall be construed.

Where the **Company** reasonably determines that punitive, exemplary or multiple damages are insurable under the applicable law, the Insurer shall not challenge that interpretation of insurability.

13.      The D&O Liability Coverage Part of the Wesco Policy defines Wrongful Act as:

**<u>Wrongful Act</u>** as used in this **Coverage Part** means any actual or alleged:

1.      error, omission, misstatement, misleading statement, neglect or breach of duty by **Insured Persons** in their capacity as such or, with respect to Insuring Agreement C., by the **Company**; or

2.      matter claimed against the **Insured Persons** solely by reason of their serving in such capacity.

14.      The Contractual Liability exclusion in the D&O Liability Coverage Part of the Wesco Policy states:

The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured**:

1.      arising from, based upon, or attributable to the assumption of any liability to defend, indemnify, or hold harmless any person or entity, other than an **Insured Person**, under any written contract or agreement, unless such liability would be imposed regardless of the existence of such contract or agreement; or

2.      for the intentional breach, in fact, of any express written or oral contract or amounts the **Company** is obligated to pay pursuant to any express written or oral contract. If it is established in fact that such **Claim** involves intentional breach of contract, the **Insured** agrees to reimburse **Defense Expenses**.

15.     The Fraud/Illegal Profit and Violation of Law exclusion in the D&O Liability Coverage Part of the Wesco Policy states:

> The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to:
>
> 1.     the gaining of any profit, remuneration or pecuniary advantage to which such **Insured** is not legally entitled; or
>
> 2.     any fraudulent or criminal **Wrongful Act** with actual knowledge of its wrongful nature or with intent to cause damage by such **Insured**,
>
> as evidenced by a final adjudication by a judge, jury or arbitrator in any proceeding.

16.     The Prior Knowledge/Litigation exclusion in the D&O Liability Coverage Part of the Wesco Policy states:

> The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to:
>
> 1.     any fact, circumstance, situation, or event that is or reasonably would be regarded as the basis for a **Potential Claim** about which any **Executive** had knowledge prior to the date of the initial **Application** for coverage; or
>
> 2.     any prior or pending civil, criminal, administrative or regulatory proceeding initiated against any **Insured** prior to the applicable Prior and Pending Litigation Date(s) set forth in Item 5. (a) of the Declarations Page, or arising out of or in any way involving the same or substantially the same fact, circumstance, situation or **Wrongful Act** underlying or alleged in such prior or pending civil, criminal, administrative or regulatory proceeding.

17.     Section VI.A (Defense of Claims) of the General Terms and Conditions of the Wesco Policy states, in relevant part:

[T]he **Insurer** will have the right to participate with the **Insured** in the investigation, defense and settlement, including the negotiation of a settlement of any **Claim** that appears reasonably likely to be covered in whole or in part by such **Coverage Part** and the selection of appropriate defense counsel.

18. Section VI.A (Defense of Claims) of the General Terms and Conditions of the Wesco Policy states, in relevant part:

[U]pon written request, the **Insurer** will advance **Defense Expenses** with respect to such **Claim**. Such advanced payments by the **Insurer** will be repaid to the **Insurer** by the **Insureds** severally according to their respective interests in the event and to the extent that the **Insureds** are not entitled to payment of such **Defense Expenses**.

19. Section VI.B (Insured's Duties and Responsibilities) of the General Terms and Conditions of the Wesco Policy states:

It shall be the duty and responsibility or the **Insured**, as a condition precedent to any coverage under this **Policy**:

1. to grant to the **Insurer** the right to associate itself in defense and settlement of any **Claim** that appears reasonably likely to involve the **Insurer**;

2. not to, except at personal cost, make any payment, admit any liability, settle any **Claims**, assume any obligation, or incur any expense without the **Insurer's** written consent, which consent shall not be unreasonably withheld;

3. to assert all appropriate defenses and to take all steps in defense of any **Claim** made, including but not limited to, releasing the **Insurer** all copies of reports, investigations, pleadings and other papers as soon as reasonably possible and to provide the **Insurer** with such information, assistance and cooperation as the **Insurer** may reasonably request to determine the existence or extent of the **Insurer's** obligation; and

4. to conduct all matters relative to any **Claim** or **Potential Claim** as if coverage under this **Policy** were not otherwise afforded, including but not limited to not admitting any liability for, settling any **Claim**, or incurring any **Defense Expenses** without the prior written consent of the **Insurer**, which consent shall not be unreasonably withheld

## THE UNDERLYING LITIGATION

17.     On or about September 20, 2017, CapLOC, LLC ("CapLOC") filed a civil action against, *inter alia*, the Bank and Funding Corp. in the Dallas County, Texas District Court.[3]  On October 20, 2017, that civil action was removed to the U.S. District Court for the Northern District of Texas (No. 3:17-cv-02904, the "Underlying Litigation").  A true and accurate copy of the original complaint (without exhibits) is attached hereto as **Exhibit 2.**

18.     On July 2, 2018, CapLOC filed a First Amended Complaint, a true and accurate copy of which (without exhibits) is attached hereto as **Exhibit 3.**

19.     On March 27, 2019, CapLOC filed a Second Amended Complaint, a true and accurate copy of which (without exhibits) is attached hereto as **Exhibit 4.**

20.     CapLOC alleges that Funding Corp., as a wholly owned subsidiary of the Bank, provided warehouse funding to an entity called First Mortgage Corp. ("FMC").[4]  CapLOC alleges that Funding Corp would fund loans originated by FMC until they were marketed and sold to an investor.

21.     CapLOC alleges that "On or about September 5, 2013, [Funding Corp.] and FMC entered into a Residential Mortgage Loan Origination and Purchase Agreement ('ASMFC Loan Agreement')."  *See* Second Amended Complaint, ¶ 22.

22.     CapLOC alleges that an entity called CBB, Inc. ("CBB")[5] conducted the operations of Funding Corp. on the Bank's behalf.  *See* Second Amended Complaint, ¶ 1.

---

[3] Upon information and belief, CapLOC first filed a lawsuit against the Bank and Funding Corp. in the U.S. District Court for the Southern District of New York on or about July 31, 2017. CapLOC voluntarily dismissed its claims against the Bank and Funding Corp. prior to filing the civil action in Dallas County, Texas District Court.
[4] FMC is not an insured entity under the Wesco Policy.
[5] CBB is not an insured entity under the Wesco Policy.

1410764                                    8

23.     CapLOC alleges that "[the Bank] provided the funds for the warehouse line of credit established by the ASMFC Loan Agreement."  *See* Second Amended Complaint, ¶ 25.

24.     CapLOC alleges that FMC "double-funding" certain loans that had already been sold to investors, and by pocketing proceeds it received from third-parties that should have been remitted to Funding Corp. to pay down the warehouse line of credit.  *See* Second Amended Complaint, ¶ 2.

25.     CapLOC alleges that the Bank and Funding Corp. "discovered FMC's theft no later than the fall of 2016."  *See* Second Amended Complaint, ¶ 3.

26.     CapLOC alleges that the result of FMC's conduct was millions of dollars in loans on the warehouse line of credit that were out-of-trust or otherwise worthless.   *See* Second Amended Complaint, ¶ 5.

27.     CapLOC alleges that the Bank and Funding Corp. informed FMC in March 2017 that they "would cease funding FMC loans and that all the money would be cut off by month's end." *See* Second Amended Complaint, ¶ 5.

28.     CapLOC alleges that it and FMC entered into a Master Repurchase Agreement on or about March 30, 2017.  CapLOC alleges that the Master Repurchase Agreement "established the terms by which CapLOC would provide warehouse lending to FMC for newly originated loans." *See* Second Amended Complaint, ¶¶ 61-62.

29.     CapLOC alleges that "Less than thirty (30) days after CapLOC replaced [the Bank] as FMC's warehouse lender, [the Bank and Funding Corp.] began moving OOT loans and undesirable loans from [the Bank's] warehouse lines onto CapLOC's, when they knew or should have known that the OOT and misdirected payoff loans were worthless and that the undesirable

loans were not eligible for funding under the CapLOC MRA and Service Agreement." *See* Second Amended Complaint, ¶ 72.

30.     The Second Amended Complaint seeks recovery for CapLOC's loss associated with "bad and worthless loans that [the Bank and Funding Corp.] moved from [the Bank's] warehouse lines to CapLOC's." *See* Second Amended Complaint, ¶ 7.

31.     The causes of action asserted by CapLOC against the Bank and Funding Corp. include fraud, fraudulent concealment, violations of the Texas Theft and Liability Act, violations of the Texas Uniform Fraudulent Transfer Act, unjust enrichment, money had and received, conspiracy, and aiding and abetting.

## WESCO'S RESERVATION OF RIGHTS

32.     Via letter dated February 9, 2018, Wesco agreed to indemnify Defense Expenses incurred by the Bank and Funding Corp. in the Underlying Litigation under a full reservation of rights, remedies, and defenses. A true and exact copy of Wesco's February 9, 2018 letter, which is incorporated herein by reference, is attached hereto as **Exhibit 5**.

33.     Wesco is entitled to a declaration that it has no obligation under the Wesco Policy to the Defendants in relation to the Underlying Litigation, and/or a declaration that any settlement does not constitute Loss under the Wesco Policy.

34.     There is no coverage under the Wesco Policy to the extent the Underlying Litigation does not allege a Wrongful Act against the Defendants.

35.     There is no coverage under the Wesco Policy pursuant to the Exclusions portion of the D&O Liability Coverage Part (and, potentially, the Exclusions portion of the Professional Liability Coverage Part), including but not limited to terms of the Contractual Liability exclusion,

the Fraud/Illegal Profit and Violation of Law exclusion, the Prior Knowledge/Litigation exclusion, and the Outside Capacity exclusion.

36.     There is no coverage under the Wesco Policy because any payments made by the Defendants to CapLOC do not qualify as Loss under the Wesco Policy.

37.     There is no coverage under the Wesco Policy to the extent the Defendants breached Section VI (Defense of Claims, Insured's Duties and Responsibilities, and Arbitration) of the Wesco's Policy's General Terms and Conditions.

38.     The Bank and Funding Corp. also engaged in settlement discussions with CapLOC without consultation with Wesco.[6]

39.     To the extent coverage is not implicated under the Wesco Policy, Wesco may be entitled to a repayment of Defense Expenses it previously advanced on behalf of the Bank and Funding Corp.

40.     Wesco continues to fully reserve any and all rights, remedies, and defenses at law, in equity, and under the Wesco Policy and its endorsements in relation to the Underlying Litigation. The filing of this Complaint is not intended to and does not constitute a waiver of any of Wesco's rights, remedies, and defenses at law, in equity, and under the Wesco Policy.

41.     Additional conditions, limitations, and exclusions may exclude or limit coverage for the Bank and/or Funding Corp. with regard to the Underlying Litigation.

## COUNT I – DECLARATORY JUDGMENT

42.     Wesco hereby incorporates by reference the allegations contained in the foregoing Paragraphs of this Complaint as if set forth fully herein.

---

[6] Wesco is not relying upon the "settlement" portions of Section VI.A.1, Section VI.B2., or Section VI.B.4 as a defense to coverage.

43.     CapLOC's allegations do not qualify as a Wrongful Act under Insuring Agreement I.C of the D&O Liability Coverage Part.  CapLOC does not allege that the Defendants committed an "error, omission, misstatement, misleading statement, neglect, or breach of duty."  Instead, CapLOC alleges that the Bank and/or Funding Corp. intentionally and/or fraudulently caused CapLOC to purchase out-of-trust and/or worthless loans, as evidenced by causes of action such as fraud, fraudulent concealment, violations of the Texas Theft and Liability Act, violations of the Texas Uniform Fraudulent Transfer Act, conspiracy, and aiding and abetting.

44.     Wesco is therefore entitled to a judicial declaration that it has no obligation to the Defendants, under the Wesco Policy or otherwise, with regard to the Underlying Litigation.

45.     The relief sought by CapLOC, and any payments made by the Bank and/or Funding Corp. to CapLOC, does not constitute a Loss under the Wesco Policy.  Among other things, any payment to CapLOC would constitute "restitution, disgorgement, or payment of similar payments including, but not limited to the return of fees, commissions or charges."

46.     CapLOC seeks restitution, disgorgement, or similar payment of funds it was allegedly tricked or induced into paying to the Bank and/or Funding Corp., as evidenced by causes of action such as unjust enrichment and money had and received.

47.     The relief sought by CapLOC, and any payments made the Bank and/or Funding Corp. to CapLOC, does not constitute a Loss under the Wesco Policy, to the extent the Bank and/or Funding Corp. seek coverage for "any unpaid, unrecoverable or outstanding amounts resulting from a loan, lease or extension of credit to any borrower, including unpaid, unrecoverable or outstanding amounts resulting from a loan, lease or extension of credit which has been sold as a participation to other financial institutions."

48.     CapLOC's allegations implicate (or potentially implicate) numerous exclusion in the D&O Liability Coverage Part (and/or the Professional Liability Coverage Part), including but not limited to the Contractual Liability exclusion, the Fraud/Illegal Profit and Violation of Law exclusion, the Prior Knowledge/Litigation exclusion, and the Outside Capacity exclusion.

49.     The Bank and Funding Corp. may have failed to satisfy certain conditions precedent to coverage under Section VI.A and Section VI.B of the General Terms and Conditions.

50.     Wesco is therefore entitled to a judicial declaration that it has no obligation to the Defendants, under the Wesco Policy or otherwise, with regard to the Underlying Litigation, and/or a declaration that any settlement does not constitute Loss under the Wesco Policy.

## COUNT II – REIMBURSEMENT

51.     Wesco hereby incorporates by reference the allegations contained in the foregoing Paragraphs of this Complaint as if set forth fully herein.

52.     Wesco agreed to advance Defense Expenses on behalf of the Bank and Funding Corp. with regard to the Underlying Litigation under a full reservation of all rights, remedies, and defenses.

53.     Section VI.A of the General Terms and Conditions states:

> [U]pon written request, the **Insurer** will advance **Defense Expenses** with respect to such **Claim**.  Such advanced payments by the **Insurer** will be repaid to the **Insurer** by the **Insureds** severally according to their respective interests in the event and to the extent that the **Insureds** are not entitled to payment of such **Defense Expenses**.

54.     If coverage is not found under the Wesco Policy, and if the Defendants "are not entitled to the payment of such Defense Expenses" such "advanced payments by the Insurer [must] be repaid to the Insurer by the Insureds severally according to their respective interests."

WHEREFORE, PREMISES CONSIDERED, Wesco respectfully requests the following relief:

1. That the proper process be issued and that the Defendants be required to answer this Complaint in the time prescribed to them by law;

2. For an Order declaring Wesco's rights and obligations under the Wesco Policy, if any, related to the Underlying Litigation;

3. For an Order declaring that Wesco has no duty or obligations to the Defendants, under the Wesco Policy or otherwise, in relation to the Underlying Litigation, and/or a declaration that any settlement does not constitute Loss under the Wesco Policy;

4. For an Order declaring that the Defendants must reimburse Wesco for all Defenses Expenses previously paid by Wesco; and

5. For such further relief as this Court deems just and proper.

s/ Evan B. Gatewood
Evan B. Gatewood
HAYES MAGRINI & GATEWOOD
1220 N. Walker Ave. (73103)
PO Box 60140
Oklahoma City OK 73146-0140
405-235-9922 (Phone)
405-235-6611 (Fax)
egatewood@hmglawyers.com

*And*

Jeffrey S. Price          TN19550
Justin D. Wear          TN23954
MANIER & HEROD, P.C.
1201 Demonbreun St., Suite 900
Nashville TN 37203
615-244-0030 (Phone)
615-242-4203 (Fax)
jprice@manierherod.com
jwear@manierherod.com

*Applications PHV Forthcoming*